IN THE MATTER OF THE PROCEEDINGS TO EXTEND SOUTH
MARKET STREET, IN THE VILLAGE OF JOHNSTOWN, THROUGH
LANDS OF MORTIMER WADE AND OTHERS.

*Charter of the village of Johnstown — street opening — compensation for private property taken for a public use — local special assessement not a compliance with the requirements of the Constitution.*

The provisions of the charter of the village of Johnstown (chapter 303 of the Laws of 1881, amended by chapter 136 of the Laws of 1891), in reference to the taking of private land for street purposes, are to the effect that compensation shall be paid to land owners out of moneys raised by a special tax or assessment which may be placed wholly upon a limited area and number of people, or may be raised in part by a general tax, and they do not provide for the village buying property on which an assessment is laid, in case there are no bidders willing to pay the assessment, nor do they make such compensation a debt against the village or impose the duty of payment upon the village:

*Held,* that these provisions do not comply with the requirements of the Constitution, in that they do not provide a certain, ample and reasonably prompt method of providing compensation for land taken.

A local special assessment, imposed on lands adjoining those taken for a public use, for the purpose of raising the money required to make payment therefor, is not a sufficient provision for compensation to comply with the requirements of the Constitution.

Unless the statute imposes a duty upon the village to pay for land taken, it cannot be implied from the mere fact of the taking of the land for a village street.

APPEAL by James Younglove from an order of the Supreme Court, made at the Clinton County Special Term, and entered in the office of the clerk of Fulton county on the 14th day of October, 1892, appointing commissioners, in a proceeding instituted by the Board of Trustees of the Village of Johnstown, to extend a street in that village.

The proceeding was instituted under chapter 136 of the Laws of 1891, amending section 48 of the village charter (Laws of 1881, chap. 303), erroneously referred to, in the resolution of the board of trustees, as chapter 303 of 1890.

The appellant is the owner of part of the lands sought to be taken for the street, and also of lands adjacent thereto.

The provisions of the State Constitution which apply to the question involved are as follows:

Article 1, section 6.   *   *   *   " Nor shall private property be taken for public use without just compensation."

Article 1, section 7. " When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the State, shall be ascertained by a jury, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law."

*John M. Carroll,* for appellant Younglove.

*Andrew J. Nellis,* for Village of Johnstown.

*Philip Keck,* for Wade and others.

*Harwood Dudley,* for Thorne.

HERRICK, J.:

This is an appeal from an order of the Special Term of this court appointing commissioners to ascertain and assess the damages claimed by land owners for their lands taken for the extension of South Market street in the village of Johnstown.

Among other objections made to the proceedings, is that the law under which they are taken does not provide a certain, ample and reasonably prompt method of providing compensation for the land taken. If this objection is well founded then the law does not comply with the requirements of the Constitution and the proceedings taken under it must fail.

It is contended in this case that the compensation for the land taken or to be taken is abundantly provided for, if, in no other way, that it is or will be a charge upon or claim against the village which can be met by taxation. I cannot assent to that view. I do not think the general power to raise money to pay the ordinary expenses of government or to carry into effect the powers granted by the charter is a sufficient authority or direction to pay land owners for property taken from them by such proceedings as here contemplated.

Unless the statute imposes a duty to pay, it cannot be implied from the mere fact of the taking of land for a city street. The authority to take, and the duty of the corporation to pay for the land taken, depend upon positive law. The authority to take will be ineffectual unless accompanied with proper provision for payment,

but the duty of the corporation to pay the land owners must be found in the affirmative prescription or reasonable intendments of the statute.. (*Sage* v. *City of Brooklyn*, 89 N. Y., 189–199.)

Here, the sums awarded for damages are not declared to be debts against the city, nor is it made the duty of the corporation to pay them. The only way in which the village would be responsible,. would be for neglect to set the necessary machinery in motion to make and collect the assessments. (*McCullough* v. *Mayor*, 23 Wend.,. 459; approved in *Sage* v. *Brooklyn*, 89 N. Y., 204, 205.)

In the Sage case there was an express provision of the charter,. which was held to apply to that case, requiring the comptroller of the city to pay the persons adjudged to have been injured. An unqualified direction to pay, not out of assessments collected or from any particular fund.

So, in the *Matter of Mayor* v. *City of New York* (99 N. Y., 578),. the city was directed to pay within four months after confirmation,. and if not done the parties might maintain an action. As the court. said: "There is no ambiguity or uncertainty about this provision,. and the citizen is not turned over to the blind remedy of uncertain and complicated assessments and a devious and doubtful litigation."'

In the charter of the village of Johnstown there is a way provided' for compensating persons whose lands are taken in such proceedings. as these, the question is whether it provides "a certain definite and, adequate source and manner of payment." (99 N. Y., 577.)

Section 47 of chapter 303 of the Laws of 1881 (charter of the: village) grants the trustees of the village power to open and extend streets and highways in the village. Section 48, as amended by chapter 136 of the Laws of 1891, prescribes the manner in which they shall exercise such powers; it provides that "whenever the trustees shall have determined to lay out, alter, widen, straighten or' extend any street, alley, lane, sewer, highway or public ground, and to take and appropriate the land necessary for the same, and shall have determined to assess the expense of such improvement, or any part thereof, as hereinafter provided, they shall give notice," etc. It. then proceeds to provide for the appointment of commissioners, and defines their duties, among others, that "they shall determine and award to the owner or owners so claiming damages, as aforesaid, such damages as in their judgment such owner or owners will sus-

tain by such improvement, after making due allowance for any benefit which such owner or owners may derive therefrom. They shall at the same time determine what real estate, if any, is benefited by such improvement, and shall assess and apportion the said damages, if any, upon such real estate, the owners of which shall have had an opportunity to be heard as aforesaid, as nearly as may be in proportion to the benefit resulting therefrom ; but if the whole of such damages cannot justly and equitably be assessed on the real estate, as above provided, then the said commissioners shall only assess such proportion thereon as, in their opinion, will be equitable and just ; and the balance thereof they shall assess or order to be paid by a general tax upon the village, provided said balance does not exceed the sum of $50,000 ; and such balance shall thereupon become a charge upon said village, and shall be added to and raised with the next general assessment or tax levy for village purposes, and the same shall be payable to the persons entitled thereto, as soon as the same shall be collected as above provided." Section 56 (chap. 303, Laws of 1881), provides for the collection of assessments for public improvements, if the assessment is not paid that the land be sold, or that the trustees may, at their option, sue for the same in a civil action.

No provision, however, is made, as in the charters of some municipal corporation, for the village buying the property in case there are no bidders willing to pay the assessment upon it, thus insuring a sale and the collection of the assessment.

It will be seen that the law provides that the compensation shall be paid to land owners out of moneys raised by a special tax or assessment which may, in the discretion of the commissioners, be placed wholly upon a limited area and number of people, or may in part be raised by a general tax or assessment.

The constitutional validity of a law is to be tested not by what has been done under it but by what may by its authority be done. (*Stuart* v. *Palmer*, 74 N. Y., 183–188.)

As we have seen under this law, the assessments to raise money to pay for the land to be taken in these proceedings may be levied upon a limited area, and we must test the sufficiency of the law upon the assumption that the assessment is to be levied and apportioned upon a limited area. Indeed, the resolution passed by the trustees

to initiate these proceedings provides for an assessment upon a limited area of property and number of people; after providing for the extension of the street in question and announcing that the lands necessary are appropriated therefor, and setting forth the names of the persons whose lands said street will cross, it also sets forth the names of the persons whose lands and property will be benefited by such extension. They then further proceed as follows: "Resolved, further, that the damages and expense for the extension, laying out and opening of said South Market street as aforesaid, as the commissioners hereafter appointed by the court may determine, shall be assessed and apportioned on the real property in said village, owned by the persons lastly hereinbefore named, and hereby deemed likely to be benefited thereby."

It is contended that the commissioners are the ones to determine who are to be assessed, and whether a portion of the expense shall be assessed upon the village generally, and that any determination by the trustees is of no consequence. There is an apparent conflict in section 48, as to who shall determine how the expense shall be assessed. I shall not attempt to reconcile the different portions of the section with each other, or determine whether the trustees or the commissioners are to determine the area over which the assessment shall be spread. I have quoted the resolution to show the intention of the village authorities to confine the assessment to a limited area and to a limited number of people, and as we have already seen, the statute is so worded that assessments can be so limited and the collection of the assessments so imposed, is the means provided to make compensation for property taken.

I do not think that such a law provides "a certain and definite and adequate source and manner of payment." (99 N.Y., 577, *supra*.)

A remedy for compensation contingent upon the realization of a fund from taxation for benefits within a limited assessment district does not meet the constitutional requirements. (*Sage* v. *Brooklyn*, 89 N. Y., 189–196.)

A local special assessment imposed on lands adjoining those taken for raising the money required to make payment therefor is not a sufficient provision for compensation to comply with the requirements of the Constitution.

It is not certain, definite or adequate, and does not provide pay-

ment without any unreasonable delay, and anyone at all familiar with the making and collection of assessments for municipal improvements must be aware that payments dependent thereon are uncertain and very apt to be unreasonably deferred. (*Chapman* v. *Gates*, 54 N. Y., 132.)

I do not think it necessary to consider the other questions raised by this appeal, but that, for the reasons already given, the order of the Special Term appealed from should be reversed, the motion for the appointment of commissioners denied, with ten dollars costs, and with ten dollars costs of this appeal and printing and other disbursements.

Let an order be entered accordingly.

MAYHAM, P. J., and PUTNAM, J., concurred.

Order reversed, with ten dollars costs of appeal, and ten dollars costs of motion and printing disbursements.